# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. J. RHINES, Minor.

UNPUBLISHED
August 4, 2015

No.  323115
Shiawassee Circuit Court
Family Division
LC No.  12-013282-NA

Before:  BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right a July 14, 2014, trial court order terminating his parental rights to the minor child, KJ, pursuant to MCL 712A.19b(3)(h) (parent imprisoned for more than two years with accompanying failure to provide proper care and custody).  For the reasons set forth in this opinion, we affirm.

## I.  FACTUAL BACKGROUND

On October 5, 2012, petitioner, Department of Health and Human Services (DHS), filed the initial petition in this case involving KJ, the minor daughter of respondent (father) and Jamie Dixon (mother).  The petition alleged that Dixon had a lengthy Child Protective Services (CPS) history consisting of 12 assigned complaints involving sexual abuse, physical abuse, physical neglect, medical neglect, and improper supervision.  The petition also alleged that Dixon was unable to maintain her finances, that utilities at the home where KJ resided with her mother had been turned off, that the home conditions were deplorable, and that Dixon did not attend to KJ's special needs as a child with cerebral palsy.  Regarding respondent, the petition alleged that he was incarcerated as a result of a manslaughter conviction and that his earliest release date from prison was July 11, 2025.  Following a preliminary hearing on October 5, 2012, the court entered an order that same day taking KJ into protective custody.

At an October 5, 2012, preliminary hearing, KJ's guardian ad litem inquired about an attorney for respondent, who was incarcerated and did not appear at the hearing.  The circuit court indicated that it would appoint an attorney for respondent because he was "less available" due to his incarceration.  The court then adjourned the hearing to allow for appointment of counsel.

On October 11, 2012, the court signed an order appointing Jana L. Kurrle as attorney for respondent.  However, the order referred to the appointment of Kurrle for respondent with the

-1-

notation "No C/A Atty Denied" written in ink across the body of the order. The circuit court register of actions includes an October 11, 2012 entry that states, "Father Denied C/A Attorney."

At an October 18, 2012, haring, a referee stated to respondent on the record that, "I know at some point at the last hearing, you requested Court appointed counsel or an attorney was going to be appointed for you. That request was denied . . . in that you are a non-custodial parent."[1] The referee asked respondent if he understood that the court did not appoint an attorney for him, and respondent replied, "Yeah, I guess so." The referee assured respondent that he would be permitted to participate in future proceedings. On the same day, the referee signed an "Order Requesting Prisoner be Allowed to Participate in Court Proceedings." Similar orders were also signed with regard to each subsequent dispositional review and/or permanency planning hearing. The October 23, 2012 "Order after Preliminary Hearing" stated that "all parties waived the Preliminary Hearing requesting the matter be scheduled for Formal Trial with PreTrial scheduled prior."

On December 11, 2012, the circuit court took jurisdiction over KJ after Dixon pleaded no-contest to the allegations in the petition. The court ultimately terminated Dixon's parental rights on March 17, 2014, following a termination hearing.

Thereafter, the court held a dispositional review hearing on February 11, 2013, and dispositional review/permanency planning hearings on April 29, 2013, July 22, 2013, September 30, 2013, and December 9, 2013. Respondent participated in all of these hearings via telephone from prison.

On April 3, 2014, at another dispositional review/permanency planning hearing, respondent requested the appointment of counsel. Following this hearing, petitioner filed a petition to terminate respondent's parental rights to KJ under MCL 712A.19b(3)(c)(*i*), (*ii*) and (h), and on April 7, 2014, the circuit court appointed attorney Charles E. Quick to represent respondent.

A termination hearing regarding respondent was held on July 8, 2014. Heather Murphy, a Catholic Charities caseworker, testified that KJ was diagnosed with cerebral palsy and required special education and neurological services. She explained that KJ was non-verbal and was not toilet trained. Murphy testified that respondent was incarcerated for the voluntary manslaughter of his estranged wife's (Dixon's) boyfriend and that his earliest release date was July 11, 2025, when KJ would be 21 years old.

Alan Witte of the Shiawassee County Office of Probation and Parole testified that respondent broke into the home of the boyfriend and stabbed him 14 times. A broken knife blade was lodged into the boyfriend's spine. Murphy explained that KJ was 5 years old when

---

[1] The reason for the circuit court's decision to first appoint an attorney for respondent, and to then change his mind and deny a court-appointed attorney for respondent, is unclear from the record, with the exception of the referee's comment.

respondent was arrested, and was 10 years old at the time of the hearing. Respondent testified that he was arrested on November 2, 2008, and had last seen KJ on Halloween 2008.

Murphy testified that placement with relatives was investigated but was not possible. Murphy stated that respondent should not have custody of KJ even if released from prison, and opined that it was in the best interests of KJ to terminate respondent's parental rights. Murphy informed the court that KJ bonded with her foster family, who were committed to her needs and wanted to adopt her. According to Murphy, the family fosters a relationship with KJ's older sister. Murphy confirmed that no services were available to respondent in prison because services are limited to those prisoners whose release date is 18 months or less.

Respondent introduced family photographs from 2005 to 2008 of himself with KJ to show that there was a loving relationship and that the condition of the family home was acceptable before his incarceration. Respondent testified that he had no objections to KJ's foster-care placement. He agreed that permanency planning was in KJ's best interests.

Following the close of proofs, the circuit court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(h) (parent imprisoned for more than two years with accompanying failure to provide proper care and custody). The court found that KJ would be 21 before respondent was released from prison and that during the interim respondent would not be able to provide care or support for KJ, a special-needs child. The court entered a written order reflecting its ruling on July 8, 2014. This appeal ensued.

II. ANALYSIS

Respondent's sole argument on appeal is that the circuit court violated his constitutional rights when it denied him the right to counsel until the termination hearing. Whether an individual was deprived of his constitutional rights involves a question of law that we review de novo. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011).

The constitutional guarantees of due process and equal protection extend the right to counsel to respondents in child protective proceedings. *In re Powers Minors*, 244 Mich App 111, 121; 624 NW2d 472 (2000). MCL 712A.17c(4), provides that, in a child protective proceeding, the circuit court "shall advise the respondent at the respondent's first court appearance" of the right to an attorney at each stage of the proceeding and the right to a court-appointed attorney in the event that the respondent cannot afford to retain counsel. In addition, MCL 712A.17c(5) provides that "[i]f it appears to the court . . . that the respondent wants an attorney and is financially unable to retain an attorney, the court shall appoint an attorney to represent the respondent." MCR 3.915(B)(1) contains similar provisions regarding appointment of counsel in child protective proceedings.

In this case, respondent's initially appeared in court via telephone at the October 18, 2012, hearing. At that hearing, the circuit court failed to inform respondent he had the right to an attorney at every stage of the proceeding and had the right to an appointed attorney in the event that he could not afford to retain an attorney. The circuit court appears to have denied the guardian ad litem's request to appoint counsel for respondent because respondent was not a custodial parent. However, irrespective of whether respondent had custody over KJ, he had a

right to counsel. *In re Powers*, 244 Mich App at 121. The circuit court therefore clearly erred in failing to inform respondent of his right to counsel at respondent's initial court appearance and in declining to appoint counsel for respondent on grounds that respondent was a non-custodial parent.

Although the circuit court erred when it initially declined to appoint counsel because respondent was not a custodial parent, in similar circumstances, this Court has applied a harmless-error analysis. *In re Hall*, 188 Mich App 217, 222-223; 469 NW2d 56 (1991). In *In re Hall*, the circuit court terminated the respondent's parental rights, and on appeal, the respondent argued that the circuit court erred when it conducted a statutory review hearing without her counsel present. *Id*. at 218. On appeal, this Court concluded, in part, that, any error with respect to the respondent's deprivation of counsel amounted to harmless error. *Id*. at 222. In particular, this Court noted that counsel was reappointed for the respondent and the respondent was represented by counsel at the termination hearing. *Id*. Furthermore, testimony offered at the statutory review hearing on behalf of petitioner was repeated at the termination hearing with counsel for the respondent present. *Id*. at 223.

Similar to *In re Hall*, importantly in this case, respondent was not denied counsel during the termination hearing. Although the court declined to appoint counsel at the outset, four days after petitioner moved to terminate respondent's parental rights, the circuit court appointed counsel on or about April 7, 2014. Thereafter, respondent was represented by counsel during the approximately three months before the July 8, 2014, termination hearing, and at the termination hearing where counsel introduced evidence and argued on behalf of respondent. Like in *In re Hall*, here, the evidence that was crucial to the court's finding grounds for termination was introduced at the termination hearing, where respondent was represented by counsel. Respondent does not identify any evidence that was introduced at any of the statutory review hearings that was not introduced during the termination hearing, and a review of the record does not reveal any such evidence. Furthermore, respondent was permitted to participate in all of the statutory review hearings via telephone from prison and once termination was authorized, respondent requested, and was granted appointed counsel.

In sum, although the circuit court erred denying respondent counsel at the outset of the proceeding, the error does not warrant vacating the court's termination order where the court appointed an attorney after petitioner moved to terminate respondent's parental rights and where counsel represented respondent during the termination phase of the proceeding.

Affirmed.


/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

-4-