## UNIPROP, INC v MORGANROTH

Docket No. 243077. Submitted January 7, 2004, at Detroit. Decided February 3, 2004, at 9:00 A.M.

Uniprop, Inc., brought an action in the Oakland Circuit Court against attorney Mayer Morganroth and Morganroth & Morganroth, P.C., alleging breach of contract on the basis that the defendants undertook a contractual obligation to repay monies owed to the plaintiff by Barry Yaker, a client of the defendants. The court, Gene Schnelz, J., granted summary disposition in favor of the defendants on the basis that the "Partial Assignment of Funds" on which the plaintiff based its belief that Morganroth had undertaken a contractual duty to the plaintiff was actually an agency agreement between Yaker and Morganroth in which Morganroth agreed to act as Yaker's agent for Yaker's promise to pay the debt. The plaintiff appealed.

The Court of Appeals *held*:

The "Partial Assignment of Funds" did not create a contract between Yaker and Morganroth or between Morganroth and the plaintiff. The plaintiff had no relationship, contractual or otherwise, with the defendants. Morganroth never expressly agreed to secure payment, nor did Morganroth incur any form of liability to the plaintiff. Morganroth was acting as the agent for his client by agreeing to act in accordance with his client's instructions. In cases such as this, where the agent expressly acknowledges the principal's actions and agrees to follow the principal's instructions, an express agency agreement is created, not a contract. Agency agreements do not create rights in third parties.

Affirmed.

1. AGENCY — RIGHTS OF THIRD PARTIES.

Agency agreements do not create rights in third parties.

2. AGENCY — LIABILITY OF AGENT.

An agent may work on behalf of a principal within the scope of the agency agreement as if the agent had stepped into the shoes of the principal without incurring any personal liability.

*Hyman Lippitt, P.C.* (by *H. Joel Newman* and *Daniel J. McCarthy*), for the plaintiff.

*Morganroth & Morganroth, PLLC* (by *Mayer Morganroth* and *Jeffrey B. Morganroth*), and *Lopatin, Miller, Freedman, Bluestone, Herskovic & Domol, P.C.* (by *Sheldon L. Miller*), for the defendants.

Before: OWENS, P.J., and SCHUETTE and BORRELLO, JJ.

BORRELLO, J. Plaintiff Uniprop, Inc., appeals from the trial court's grant of summary disposition in defendants' favor on plaintiff's breach of contract claim. Plaintiff contends that defendants undertook a contractual obligation to repay monies owed to plaintiff by defendants' client, Barry Yaker. The trial court granted summary disposition, holding that defendants neither undertook nor owed a contractual duty to ensure plaintiff was paid. We affirm the trial court's decision by holding that agency agreements do not create rights in third parties.

Defendant Mayer Morganroth represented Barry Yaker in legal proceedings in the state of New York. During those proceedings, plaintiff asserted that Yaker owed a debt to it in the amount of $333,000. In lieu of taking other actions to secure their debt, plaintiff entered into a contract entitled "Partial Assignment of Proceeds." That agreement reads as follows:

> 1. Chemical Bank has instituted a lawsuit against Barry Yaker which is entitled as follows: Supreme Court of the State of New York County of New York, Part 36 Chemical Bank, Plaintiff-against-Barry Yaker, Defendant, Index No. 10448/94.
>
> 2. In said lawsuit, Chemical Bank filed a Writ of Attachment prior to Judgment causing one million dollars of funds due and payable to Barry Yaker from New York Life Insur-

ance Company to be tied up pending the resolution of the aforesaid lawsuit.

3. Said one million dollars of funds have been deposited since 1994 with the Supreme Court of New York, County of New York, pending the outcome of said lawsuit.

4. Upon the court granting a decision in favor of Barry Yaker in the aforesaid lawsuit, one million dollars, together with interest earned, thereon will become the property of Barry Yaker and will be paid over to him.

5. Barry Yaker owes certain sums of money to Uniprop Inc. for monies loaned to Barry Yaker as evidenced by Promissory Notes held by Uniprop Inc. Barry Yaker wishes to secure Uniprop Inc. in relation to certain portions of those funds by making a Partial Assignment of Proceeds to the deposit money above referred to and to direct counsel for Barry Yaker in the above referred to lawsuit to take notice of said Assignment and to not allow disbursement of the attached funds when they become available to Barry Yaker without provision for payment to Uniprop Inc. of the amount set forth in this Partial Assignment of Funds.

NOW THEREFORE, this Partial Assignment of Funds provides:

a. Barry Yaker hereby assigns to Uniprop Inc. from the amount held under the Writ of Attachment in the above-described lawsuit, the sum of $333,000.

b. Barry Yaker hereby directs Mayer Morganroth of the law firm of Morganroth & Morganroth, his legal counsel in the above entitled matter, that from the one million dollars of attached funds as above referred to that the sum of $333,000 shall be paid to Uniprop Inc.

c. Barry Yaker directs and requests that Mayer Morganroth confirm to Uniprop Inc. that he has received the instructions set forth herein by acknowledging a copy of this Agreement.

Yaker signed the Partial Assignment of Funds on February 8, 1996. Thereafter, Mayer Morganroth signed the assignment. Above his signature appeared the following:

> The Undersigned acknowledges receipt of a copy of the Partial Assignment of Proceeds by Barry Yaker to Uniprop Inc. and agrees to proceed in accordance with the instructions set forth herein, dated this 16th day of February, 1996.

Plaintiff contends that under this partial assignment, Morganroth promised to: (1) follow Yaker's instructions entirely; (2) secure payment of $333,000 for Uniprop; (3) prevent disbursement of the funds made available to Yaker until payment to Uniprop was secured; and (4) notify Uniprop that Morganroth received both Yaker's instructions and a copy of the Partial Assignment of Funds. Plaintiff argues that it has status as a third-party beneficiary from the "contract" between Yaker and Morganroth wherein Morganroth agreed to accept direct responsibility for securing plaintiff's share of the escrow funds, agreed to expressly and directly prevent disbursement of the funds when they became available, and agreed to be personally liable. Thus, plaintiff argues that by failing to undertake these promises, Morganroth breached his duty to plaintiff.

We disagree, because the Partial Assignment of Funds did not create a contract between Yaker and Morganroth. Two of the essential elements of a valid contract are consideration and a meeting of the minds, both of which are missing from the Partial Assignment of Funds. In the agreement, Morganroth expressly agreed to follow Yaker's instructions. Morganroth never expressly agreed to secure payment, nor did Morganroth incur any form of liability to plaintiff. Thus, Morganroth was clearly acting as the agent for his client by agreeing to act in accordance with his client's instructions. In such cases, where the agent expressly acknowledges the principal's actions

and agrees to follow the principal's instructions, an express agency agreement is created, not a contract. Thus, the legal relationship created here, as in most cases involving attorneys and their clients, is one of agency. See, generally, *Fletcher v Fractional No 5 School Dist Bd of Ed*, 323 Mich 343, 348; 35 NW2d 177 (1948).

Agency agreements do not create rights in third parties. In *Koppers Co, Inc v Garling & Langlois*, 594 F2d 1094 (CA 6, 1979), a lender agreed to advance approximately $2,265,000 to the owner of a construction project, who agreed to use the funds to construct a multifamily luxury apartment complex. As security for the loan, the owner granted the lender a mortgage on the property and improvements to be constructed. Under the terms of the building loan agreement and mortgage executed between the lender and the owner, the proceeds of the loan were to be advanced in installments as the construction progressed, less a ten percent "holdback." To that end, the lender separately engaged Lawyers Title Insurance Corporation, which had insured the lender's mortgage as a first lien against the property, to oversee the loan fund disbursements to the owner. The owner contracted separately with Mega Construction Company for Mega to serve as general contractor for the project; and the general contractor, in turn, entered into various subcontracts, including the one with Koppers, for materials and labor. When the project went into default, Koppers had not been paid for the approximately $46,000 worth of materials and labor it had supplied the project under its contract with the general contractor. Koppers filed a lien for that amount against the apartment complex property under Michigan's

mechanic's lien statute. The Sixth Circuit Court of Appeals found that the nature of the relationship between the lender and Lawyers under the disbursing agreement was one of principal and agent. That is, Lawyers agreed merely to act as the lender's agent for the performance of the lender's promise to the owner to make the construction loan. The Court held that *"[u]nder long-settled principles of contract law, agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has retained an agent to render it." Id.* at 1098, citing 4A Corbin, Contracts, § 779E (1951) (emphasis added).

The fact pattern set forth in *Koppers, supra,* is analogous to the fact pattern in this matter. In the Partial Assignment of Funds, Morganroth was not a party to the agreement between Yaker and plaintiff. Rather, Morganroth agreed to act as Yaker's agent for Yaker's promise to pay the debt from the proceeds of the New York lawsuit.

Further, "an agent may work on behalf of a principal within the scope of the agency agreement as if the agent had stepped into the shoes of the principal without incurring any personal liability." *PM One, Ltd v Dep't of Treasury,* 240 Mich App 255, 266-267; 611 NW2d 318 (2000). Thus, Morganroth's agreement to act as Yaker's agent with respect to the partial assignment did not make defendants personally liable for the debt. Morganroth was Yaker's legal counsel; an attorney often acts as his client's agent, and his authority may be governed by what he is expressly authorized to do as well as by his implied authority. *Slocum v Littlefield Pub Schools Bd of Ed,* 127 Mich

App 183, 194; 338 NW2d 907 (1983). A characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons. The principal has the right to control the conduct of his agent with respect to the matters entrusted to him. *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 558; 581 NW2d 707 (1998). Furthermore, as noted, to qualify as a third-party beneficiary of Yaker's promise to pay plaintiff $333,000, plaintiff is required at the very least to show that there was a contract. The Partial Assignment of Funds did not create a contract between Yaker and Morganroth or between Morganroth and plaintiff. Plaintiff had no relationship, contractual or otherwise, with the defendants.

Plaintiff contends that numerous issues of fact arise with regard to whether Morganroth attempted to fulfill his "obligation" to secure payment for plaintiff and whether Morganroth counseled Yaker to distribute the proceeds to plaintiff in accordance with the Partial Assignment of Funds. But these factual issues are contingent on a finding that a contract existed between Morganroth and Yaker. Because we find that the nature of the relationship was one of agent and principal only, plaintiff's remaining claims are without merit. The nature of the legal relationship between the parties was a question of law, which question was properly decided by the trial court.

Despite the fact that it is a "long-settled" principle of contract law that "agency agreements do not create rights in third parties," *Koppers, supra* at 1098, our state's jurisprudence is devoid of any decision

specifically stating this principle. We therefore adopt this "long-settled principle" and hold that agency agreements do not create rights in third parties.

Affirmed.